**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-00528-NYW-CYC

JECHT REVAN,

     Plaintiff,

v.

UNIVERSITY OF DENVER DEPARTMENT OF CAMPUS SAFETY,

     Defendant.

---

## ORDER ON PARTIAL MOTION TO DISMISS

---

This matter comes before the Court on Defendant's Partial Motion to Dismiss ("Motion to Dismiss" or "Motion"). [Doc. 24, filed May 23, 2025]. Plaintiff Jecht Revan ("Plaintiff" or "Mr. Revan") has responded in opposition. [Doc. 26]. Defendant University of Denver Department of Campus Safety ("Defendant" or "DCS") has replied. [Doc. 31]. The Court finds that oral argument would not materially assist in the disposition of the Motion to Dismiss. Upon review of the Motion and the related briefing, the applicable case law, and the entire docket, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The following facts are drawn from the operative First Amended Complaint and Jury Demand ("Amended Complaint"), [Doc. 23], and the Court accepts them as true for purposes of the Motion.

Mr. Revan is of "Native American, Israeli, and Jewish descent." [*Id.* at ¶ 10]. He was hired by DCS in April 2022 and promoted to Corporal "at the end of September 2022."

[*Id.* at ¶ 11].  Shortly after his promotion, Mr. Revan witnessed an incident between a male coworker and a female coworker that he believed was harassment.  [*Id.* at ¶ 12].  He reported the incident to his supervisor, Sergeant Kimo Malott ("Sergeant Malott"), who told him, "I wish you hadn't told me that because now I have to tell the Captain."  [*Id.* at ¶ 14].  The Captain, a Captain Hasty, informed Mr. Revan that the incident would be handled "internally."  [*Id.* at ¶ 15].  When Mr. Revan asked whether they needed to report the incident to the campus Title IX office, Captain Hasty became "very aggressive" and told Mr. Revan that he would be fired if he reported the incident to the Title IX office.  [*Id.* at ¶ 15].  Captain Hasty also threatened to ensure Mr. Revan "never worked in security again" after Mr. Revan engaged in "an innocent hallway conversation" with Captain Hasty's supervisor.  [*Id.* at ¶ 18].

Starting in July 2022, Mr. Revan frequently worked with Madison Carney ("Ms. Carney").  [*Id.* at ¶¶ 22–29].  Mr. Revan does not specify Ms. Carney's race but alleges that she was outspoken about her bisexuality.  [*Id.* at ¶ 23].[1]  When they worked together, Ms. Carney made comments on a "weekly basis" about Mr. Revan's identity, calling him an "old white man" and telling him that he could "never understand her."  [*Id.* at ¶¶ 23–24].  Ms. Carney also made "sexual advances" toward Mr. Revan on a weekly basis, such as telling him they could be "more than friends" and inviting him to a party that her

---

[1] Mr. Revan asserts in his Response that Ms. Carney is white.  [Doc. 26 at 6].  But in deciding the Motion, the Court must assess the factual allegations in the Amended Complaint and cannot consider additional allegations in Mr. Revan's briefing.  *See, e.g.*, *In re Qwest Commc'ns Int'l., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiff[ ] may not effectively amend [his] Complaint by alleging new facts in [his] response to a motion to dismiss."); *Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F. Supp. 3d 1150, 1164 (D. Kan. 2017) ("The court does not consider allegations made in parties' briefs when deciding a motion to dismiss." (citation omitted)).

boyfriend would not be attending. [*Id.* at ¶ 25]. Mr. Revan asked Ms. Carney to "stop harassing him," but Ms. Carney would respond, "[W]hat are you going to do about it? I am one of the only females in the department, they'll never believe you over me." [*Id.* at ¶ 26]. Ms. Carney also repeatedly told him that she was his superior and he needed to follow her orders, even though they held the same position. [*Id.* at ¶ 28]. Mr. Revan requested to change shifts due to Ms. Carney's behavior. [*Id.* at ¶ 78].

In late October 2022, Ms. Carney initiated an Internal Affairs investigation against Mr. Revan based on her mistaken belief that she was his superior. [*Id.* at ¶ 29]. The investigation concluded that her claim was "baseless." [*Id.* at ¶ 32]. Around this time, Mr. Revan also told Sergeant Malott about Ms. Carney's behavior. [*Id.* at ¶ 30]. Sergeant Malott responded that he would not investigate Mr. Revan's claims, because Ms. Carney was young and female and DCS Command Staff would not believe Mr. Revan. [*Id.* at ¶ 31]. After the Internal Affairs investigation concluded, Mr. Revan also asked unidentified members of Command Staff if Ms. Carney would suffer repercussions. [*Id.* at ¶ 33]. They told him she would not. [*Id.*].

In December 2022, Mr. Revan responded to a report of an attempted bike theft. [*Id.* at ¶¶ 34–35]. When he arrived, the suspected thief was no longer attempting to steal a bike. [*Id.* at ¶ 35]. Mr. Revan called for the suspect to stop, and the suspect approached while "reaching into his bag for [a] weapon." [*Id.* at ¶¶ 36–37]. When the suspect did not comply with Mr. Revan's commands to stop, Mr. Revan pepper-sprayed him. [*Id.* at ¶¶ 37–38].

According to Mr. Revan, he was wrongly accused of using excessive force during this incident. [*Id.* at ¶ 34]. DCS terminated Mr. Revan because (1) he was not using force

to prevent a crime in progress, and (2) he had violated policy by responding without waiting for backup. [*Id.* at ¶ 40]. Mr. Revan appealed his termination without success. [*Id.* at ¶ 43]. The Amended Complaint does not specify exactly which person(s) or entities decided his appeals, but Mr. Revan alleges that Captain Hasty and Sergeant Malott provided information that led to his termination being upheld. [*Id.*]. Mr. Revan also alleges that two other DCS employees—Michael Roll ("Mr. Roll") and Sergeant Malott—were not terminated despite engaging in similar conduct around the same time as Mr. Revan's termination. [*Id.* at ¶¶ 44–46].

Mr. Revan asserts six claims in his Amended Complaint. First, he brings a claim for gender and race/color discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 ("Count I"). [Doc. 23 at ¶¶ 51–57]. Second, he brings a claim for Title VII retaliation ("Count II"). [*Id.* at ¶¶ 58–70]. Third, he brings a claim for Title VII discrimination based on a hostile work environment ("Count III"). [*Id.* at ¶¶ 71–80]. Mr. Revan also brings three related claims under the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-401 to -408 ("Counts IV–VI"). [*Id.* at ¶¶ 81–109].

DCS's Motion seeks dismissal of all claims except Count II. [Doc. 24 at 1, 2 n.2]. DCS asserts that during the Parties' conferral prior to the filing of the Motion, Plaintiff "conceded his claims under the CADA and agrees to their dismissal." [Doc. 24 at 1 n.1]. In his Response, Plaintiff does not dispute this assertion and does not mention CADA or Counts IV–VI. *See* [Doc. 26]. Accordingly, the Motion is **GRANTED in part** as to Counts IV–VI, and those claims are **DISMISSED without prejudice**. The Court limits its analysis to DCS's argument that Counts I and III should be dismissed for failure to state a claim.

4

*See* [Doc. 24 at 6–11].

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.    Count I:  Gender and Race Discrimination

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)]." *Khalik v. United Air Lines*, 671 F.3d

1188, 1192 (10th Cir. 2012).

The *McDonnell Douglas* framework applies when a plaintiff presents only circumstantial evidence that a given employment decision arose from discrimination. While the framework is not a pleading requirement, *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), it may guide the Court in determining whether a plaintiff has sufficiently pleaded a cause of action based on indirect evidence, *see Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990) ("The *McDonnell Douglas* inferences provide assistance to a judge as he addresses motions to dismiss[.]"). The elements of a prima facie case of discrimination under the *McDonnell Douglas* framework are (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; and (3) "the challenged action occurred under circumstances giving rise to an inference of discrimination." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024). (quotation omitted).

When a Title VII plaintiff submits direct evidence of discrimination, however, his claim "may move forward without being subjected to" the *McDonnell Douglas* framework. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (quotation omitted). "Comments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and acted on his or her discriminatory beliefs." *Tabor*, 703 F.3d at 1216. If the alleged discriminatory statements "require the trier of fact to infer that discrimination was a motivating cause of an employment decision," those statements are "at most

circumstantial evidence of discriminatory intent." *McNellis*, 116 F.4th at 1137 (quotation omitted). And "discriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision." *Tabor*, 703 F.3d at 1216. As *Tabor* recognizes, the "adverse action" requirement applies under either the direct-evidence standard or *McDonnell Douglas* framework. *See id.*; *see also Cuenca v. Univ. of Kan.*, 265 F. Supp. 2d 1191, 1205 (D. Kan. 2003) ("To constitute direct evidence, the evidence . . . must relate directly to the adverse action at issue . . . ." (collecting cases)), *aff'd*, 101 F. App'x 782 (10th Cir. 2004).

The adverse action requirement is particularly salient here, both because Defendant attacks it in the Motion, *see* [Doc. 24 at 7–8], and because the law regarding this requirement has recently shifted. For many years, the Tenth Circuit defined an "adverse action" as one that "constitutes a *significant* change in employment status." *Sanchez v. Denv. Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (emphasis added) (quotation omitted), *abrogated by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). Recently, however, the Supreme Court "unambiguously changed" the legal standard for adverse action in the Tenth Circuit. *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1215–16 (10th Cir. 2025) (cleaned up) (quoting *Muldrow*, 601 U.S. at 356 n.2). In *Muldrow*, the Court explained that Title VII's antidiscrimination provision "flatly prevents injury to individuals based on status, without distinguishing between significant and less significant harms." 601 U.S. at 358 (cleaned up). Thus, an adverse employment action "must have left [the plaintiff] worse off, but need not have left [him] significantly so." *Id.* at 359. "To make out a Title VII discrimination claim, a [plaintiff] must show some harm respecting an identifiable term or condition of employment." *Id.* at

7

354–55.  For purposes of the Motion, then, the Court's inquiry is whether Mr. Revan has adequately alleged an adverse action as defined in *Muldrow*.

Mr. Revan asserts that he suffered three adverse actions:  (1) Sergeant Malott's refusal to investigate Mr. Revan's complaints of harassment; (2) Captain Hasty's threat that Mr. Revan would be fired if he formally reported harassment; and (3) DCS's decision to terminate him.  [Doc. 23 at ¶ 55; Doc. 26 at 4–5].  The Court considers whether any of these alleged adverse actions state a Title VII discrimination claim under the applicable method of proof.

### A.    Refusal to Investigate Complaint

The first alleged adverse action is Sergeant Malott's refusal to investigate Mr. Revan's complaint about Ms. Carney.[2]  [Doc. 23 at ¶ 55; Doc. 26 at 4].  When Mr. Revan complained that Ms. Carney was harassing him, Sergeant Malott told Mr. Revan that he would not investigate the complaint because Ms. Carney is "young and a woman" and "[Command Staff] won't believe you."  [Doc. 23 at ¶ 31].  On its face, this statement asserts that Sergeant Malott declined to investigate Mr. Revan's complaint because Mr. Revan is male and Ms. Carney is female.  *See Fassbender*, 890 F.3d at 883.  Accordingly,

---

[2] Mr. Revan also suggests that he reported Ms. Carney's conduct to "others in his chain of command" who refused to investigate the complaint.  [Doc. 26 at 4 (citing [Doc. 23 at ¶ 30])].  But the Amended Complaint contains no non-conclusory allegations regarding any complaint by Mr. Revan to any person other than Sergeant Malott.  *See* [Doc. 23 at ¶ 30 (describing complaint to Sergeant Malott without mentioning others in chain of command); *id.* at ¶ 55 (referring to incidents where Mr. Revan "was informed that his complaints of harassment would not be investigated," without describing what those complaints were or who "informed" Mr. Revan that no investigation would take place)].  Because the Court need not credit these conclusory allegations, the Court limits its analysis to the factual allegations regarding Sergeant Malott's refusal to investigate.  *See Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

the Court analyzes this portion of Count I using the direct-evidence framework.  *See id.*
The relevant question is thus whether Sergeant Malott's refusal to investigate constitutes
an adverse action.

The Parties focus on the Tenth Circuit's holding in *Daniels v. United Parcel
Service, Inc.* that "a failure to investigate a complaint, unless it leads to demonstrable
harm, leaves an employee no worse off than before the complaint was filed."  701 F.3d
620, 640 (10th Cir. 2012), *abrogated on other grounds by Muldrow*, 601 U.S. 346; *see*
[Doc. 26 at 4; Doc. 31 at 2–3].   *Daniels* was a retaliation case in which the plaintiff
contended that her employer's failure to investigate a complaint was in retaliation for the
plaintiff's protected act of submitting the same complaint.  701 F.3d at 640–41.   The
*Daniels* majority expressly noted that its holding did not address whether a failure to
investigate could be considered an adverse action if done in retaliation for a separate
protected act.  *Id.* at 640 n.7.   "[S]ince *Daniels*, district courts in our Circuit routinely have
held that failing to investigate—at least where plaintiff alleges no follow-on harm—doesn't
constitute . . . a retaliatory adverse employment action."  *Pearson v. Kan. Dep't of Corr.*,
No. 23-cv-02288-DDC, 2024 WL 4948884, at *18 (D. Kan. Dec. 3, 2024) (collecting
cases).   The Tenth Circuit has not, however, extended *Daniels* to the discrimination
context.

Nevertheless, the Court agrees that *Daniels* is instructive, particularly when read
in light of *Muldrow*.   "The words 'discriminate against'" in Title VII's antidiscrimination
provision "refer to differences in treatment that injure employees" with respect to the terms
or conditions of their employment.   *Muldrow*, 601 U.S. at 354 (quotation omitted).   Thus,
when an employer fails to investigate an employee's complaint based on a discriminatory

9

motive and that failure injures the employee as to the terms or conditions of his employment, the employee has suffered discrimination as defined in *Muldrow*. Or, said differently, the failure to investigate in such a case has led to "demonstrable harm." *Daniels*, 701 F.3d at 640. The D.C. Circuit has persuasively explained that "a claim of discriminatory or retaliatory failure to remediate may be sufficient if the uncorrected action would (if it were discriminatory or retaliatory) be of enough significance to qualify as an adverse action (under the relevant standard)." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011); *cf. Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 348–49 (6th Cir. 2008) (concluding that a reasonable jury could find retaliatory adverse action where male coworker set fire to female plaintiff's car after she reported him for harassment, plaintiff complained about the fire to her employer, and the employer failed to investigate). And the Tenth Circuit has already recognized a comparable rule in the hostile work environment context: "An employer can be held liable if its employees create a hostile work environment and it knew or should have known about the conduct but failed to stop it." *Throupe v. Univ. of Denv.*, 988 F.3d 1243, 1251 (10th Cir. 2021) (quotation omitted).

Applying *Daniels* and *Muldrow*, the Court respectfully concludes that Mr. Revan has adequately alleged that Sergeant Malott's failure to investigate harmed Mr. Revan with respect to the terms and conditions of his employment. Mr. Revan contends that Sergeant Malott's failure to take action subjected Mr. Revan to further harassment by Ms. Carney. [Doc. 26 at 4].[3] As explained below, the Court holds that Mr. Revan has plausibly

---

[3] Mr. Revan also asserts in his Response that the failure to investigate was intended to discourage Mr. Revan from protecting his rights and "had the effect of discouraging Mr. Revan from submitting further complaints, as he didn't believe it would lead to any meaningful resolution." [Doc. 26 at 4]. These allegations do not appear in the Amended Complaint, and the Court does not consider them. *Rezac*, 255 F. Supp. 3d at 1164.

alleged that Ms. Carney's conduct toward him constitutes a hostile work environment. *See infra* Part II.  Such a holding necessarily means that Ms. Carney's alleged harassment altered a term or condition of Mr. Revan's employment.  *See Throupe*, 988 F.3d at 1251.  As alleged, then, Sergeant Malott's discriminatory failure to investigate caused a harm to Mr. Revan that is cognizable under Title VII.  *See Muldrow*, 601 U.S. at 354–55; *cf. Aman v. Dillon Cos.*, No. 11-cv-02973-JLK, 2014 WL 958712, at *18 (D. Colo. Mar. 11, 2014) (observing in hostile work environment context that, although no adverse action is required, "a failure to investigate discriminatory conduct may have altered Mr. Aman's environment in the sense that discrimination was allowed to continue and intensify").  And because the direct-evidence standard governs this portion of Mr. Revan's discrimination claim, the claim "may move forward" without further analysis.  *See Tabor*, 703 F.3d at 1216.  Accordingly, the Motion is respectfully **DENIED** insofar as Count I is predicated on Sergeant Malott's failure to investigate.

### B.    Threats of Termination

Mr. Revan next asserts that Captain Hasty's threats of termination constitute an adverse employment action.  [Doc. 23 at ¶ 55; Doc. 26 at 4–5].  Captain Hasty's threats do not indicate race- or sex-based discrimination on their face, so the Court's analysis is guided by the first step of the *McDonnell Douglas* framework.  *See Fassbender*, 890 F.3d at 883.  The first element of a prima facie discrimination case—Mr. Revan's membership in a protected class—is not at issue.  Regarding the second element, DCS argues that "[u]nrealized threats of termination are not adverse employment actions."  [Doc. 24 at 7 (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005))].  Mr. Revan counters that the threats were carried out here, because he was in fact terminated.  [Doc.

26 at 4–5].  To the extent that a threat generally only becomes an adverse action when it is carried out, Mr. Revan does not explain why Captain Hasty's threats should be analyzed separately from the termination itself.  But even assuming the threats of termination can constitute a standalone adverse action, Mr. Revan still fails to adequately allege that the threats "occurred under circumstances giving rise to an inference of discrimination."  *McNellis*, 116 F.4th at 1139 (quotation omitted).

"An inference of discrimination arises when there is a 'logical connection' between each element of the prima facie case and the alleged discrimination."  *Duran v. Metro Treatment of Colo., L.P.*, No. 18-cv-00547-PAB-GPG, 2019 WL 4450220, at *4 (D. Colo. Sept. 17, 2019) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)).  This is a "flexible" inquiry that may vary based on the facts of the case at hand.  *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).  Some circumstances that can give rise to an inference of discrimination include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" or "preferential treatment given to employees outside the protected class."  *Id.* at 1101 (quotation omitted).  To establish an inference of discrimination based on treatment of employees outside the protected class, a plaintiff must be "similarly situated" to the comparator employee.  *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).  "Employees are similarly situated when they share a supervisor or decision-maker, must follow the same standards, and engage in comparable conduct."  *Id.*

Mr. Revan fails to plausibly allege any circumstances that give rise to an inference of discrimination.  He does not allege any sex- or race-based comments by Captain Hasty

that suggest a discriminatory motive behind the threats.   Rather, Mr. Revan's sole argument for Captain Hasty's discriminatory motive is that "Ms. Carney . . . was never threatened with discipline, termination, or a ruined career when she made complaints." [Doc. 26 at 7].  Although Mr. Revan and Ms. Carney both made "complaints" in a general sense, Mr. Revan has not alleged specific facts showing that Mr. Revan and Ms. Carney were similarly situated as to these incidents.  Captain Hasty first threatened Mr. Revan after Mr. Revan asked whether they needed to submit Mr. Revan's report of harassment to the campus Title IX office.  [Doc. 23 at ¶ 15].  Ms. Carney, on the other hand, "initiated an Internal Affairs ('IA') investigation against Mr. Revan" based on her complaint that Mr. Revan "needed to follow her orders."  [*Id.* at ¶¶ 28–29].  But Mr. Revan does not allege that Captain Hasty was the "decision-maker" (or involved at all) in the IA investigation of Ms. Carney's complaint.  *See Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (explaining that the same decision-maker is critical because, otherwise, "[d]ifferences in disciplinary decisions may be explained by the fact that the discipline was administered by different supervisors" (quotation omitted)).  Nor does Mr. Revan allege that these complaints were subject to the same standards.  Unlike Mr. Revan's report of harassment—which apparently did not trigger an IA investigation—there is no allegation that Ms. Carney's complaint of insubordination reported any similarly serious conduct that would implicate "the heavy artillery of federal antidiscrimination law."  *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002).  With such limited allegations and argument, Mr. Revan cannot establish that he and Ms. Carney were "similarly situated," even at this early stage.

The Court respectfully concludes that Mr. Revan fails to plausibly allege

circumstances giving rise to an inference of discrimination with respect to Captain Hasty's threats toward him.  The Motion is **GRANTED** insofar as Count I is predicated on Captain Hasty's threats to Mr. Revan.[4]

### C.    Termination

The Parties do not assert, nor does the Court find, that Mr. Revan has alleged any direct evidence of discrimination regarding his termination.    In challenging the discriminatory termination portion of Count I, DCS focuses solely on the third element of the prima facie case.  [Doc. 24 at 7–9].  DCS argues that Captain Hasty and Sergeant Malott never made any race- or sex-based comments that give rise to an inference of discrimination.  [*Id.*].  Although Ms. Carney did make such comments, she had no role in the decision to terminate Mr. Revan.  [*Id.*].  DCS also contends that Mr. Revan fails to allege that the comparator employees—Sergeant Malott and Mr. Roll—belonged to different race and sex classifications than Mr. Revan.  [*Id.* at 8–9].  Mr. Revan responds that the individuals with "authority over" his termination "had demonstrated a disinclination to believe the word of a perceived white man over that of a woman."  [Doc. 26 at 8].  He also contends that Sergeant Malott and Mr. Roll were similarly situated to him, but he does not address their respective races and sexes.  [*Id.* 6–7].

Neither of Mr. Revan's theories of discrimination are sufficiently supported by factual allegations.    First, regarding the alleged comparators, the Court respectfully agrees that Mr. Revan cannot allege an inference of discrimination based on disparate treatment without specifying the races of the comparator employees.    Tenth Circuit

---

[4] Captain Hasty's alleged threats may still be relevant to the surviving portions of Mr. Revan's claims.

precedent expressly frames this method of establishing discriminatory motive as a comparison between the plaintiff and a "similarly situated employee who is *not part of the protected class*." *Ibrahim*, 994 F.3d at 1196 (emphasis added); *see also Plotke*, 405 F.3d at 1101 (referencing "preferential treatment given to employees outside the protected class"). Mr. Revan does not explain why he believes race discrimination can be inferred from DCS's treatment of Mr. Roll and Sergeant Malott without an allegation that these employees are of different races than Mr. Revan. Similarly, Mr. Revan has failed to allege sufficient facts to support a claim of sex discrimination when Mr. Revan, Mr. Roll, and Sergeant Malott all seem to be male.

Second, Mr. Revan cannot salvage this claim with the vague assertion that the individuals involved in his termination had demonstrated a "disinclination to believe the word of a perceived white man over that of a woman." *See* [Doc. 26 at 8]. With respect to any individual other than Sergeant Malott, the allegation that these unnamed "individuals" with authority over Mr. Revan's termination tended to believe female employees over male employees is conclusory and unsupported by specific factual allegations. Aside from a generic reference to "DCS" terminating him, Mr. Revan never specifies what individual or individuals made the decision to terminate him. [Doc. 23 at ¶ 40]. Nor does Mr. Revan explain how such a tendency to believe women over "perceived white men" might have played a role in the termination decision, given that Mr. Revan's account of the supposed excessive force incident was apparently never pitted against the "word" of any female officer, witness, or suspect. *See* [*id.* at ¶¶ 34–43].

Although Sergeant Malott did make a comment that reflected a sex-based animus toward Mr. Revan, there is no allegation that Sergeant Malott had any authority over the

decision to terminate Mr. Revan.  "In general, statements by a non-decisionmaker . . . cannot be used to establish that a decision was tainted by discriminatory animus." *Cuenca v. Univ. of Kan.*, 101 F. App'x 782, 788 (10th Cir. 2004) (citation omitted).  To be sure, an exception to this rule might apply if Mr. Revan alleged that the decisionmaker "adopted or relied upon the allegedly discriminatory statement in reaching its decision." *Id.*  But Mr. Revan fails to allege that Sergeant Malott played any role in the initial decision to terminate him.  *Cf. Chea v. IHC Health Servs., Inc.*, No. 1:21-cv-00073-TS-DAO, 2023 WL 22209, at *1, *3 (D. Utah Jan. 3, 2023) (concluding that plaintiff failed to establish prima facie case of discrimination where there was no "nexus" between alleged discrimination by plaintiff's immediate supervisor and a different corporate officer's decision to terminate the plaintiff); *Orozco v. Selrico Servs., Inc.*, No. 08-cv-00600 BB-CG, 2009 WL 10706755, at *4 (D.N.M. Nov. 24, 2009) (finding no inference of discrimination from alleged single discriminatory comment made by non-decisionmaker that was not directed at plaintiff).  And while the individuals or entities that reviewed his termination apparently relied on "information provided by Captain Hasty and Sergeant Malott," Mr. Revan neither specifies what that information was nor alleges that the decisionmaker credited any discriminatory statement by Sergeant Malott.  *See* [Doc. 23 at ¶ 43].  Absent factual allegations linking Sergeant Malott's comment to the termination decision, Mr. Revan cannot establish a plausible claim for discriminatory sex-based termination.  The Motion is respectfully **GRANTED** insofar as Count I is based on Mr. Revan's termination.

## II.    Count III:  Discrimination Based on Hostile Work Environment

DCS next argues that Mr. Revan has failed to adequately allege a claim for

discrimination based on a hostile work environment. [Doc. 24 at 10–11]. Hostile work environment claims are governed by the *McDonnell Douglas* framework. *Throupe*, 988 F.3d at 1251. To state a prima facie claim for hostile work environment under Title VII, Plaintiff must plausibly allege that (1) he was discriminated against based on his sex and/or race; and (2) "the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of [her] employment and created an abusive working environment."[5] *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1227 (10th Cir. 2022) (quotation omitted). Where, as here, a plaintiff alleges that he experienced discrimination based on multiple protected characteristics, the Court may "aggregate evidence of racial hostility with evidence of sexual hostility to establish a hostile work environment." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997); *see also Ford*, 45 F.4th at 1227 (holding that aggregation is "permissible" but not required).

In evaluating whether the alleged discrimination rises to the level of a hostile work environment, the Court is mindful that "Title VII does not establish a general civility code for the workplace." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012) (cleaned up). "Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Id.* at 664. A plaintiff must point to a "steady barrage of opprobrious [discriminatory] comments" rather than "a few isolated incidents." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015) (quotations omitted); *see also Faragher v. City of*

---

[5] The Tenth Circuit has held that *Muldrow* does not alter the analysis of whether certain conduct was sufficiently severe or pervasive to constitute a hostile work environment. *See Russell v. Driscoll*, 157 F.4th 1348, 1351 (10th Cir. 2025) ("[W]e do not believe the Supreme Court's hostile-environment decisions rest on reasons rejected in *Muldrow*.") (cleaned up)).

*Boca Raton*, 524 U.S. 775, 788 (1998) (recognizing that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not constitute a hostile work environment (cleaned up)).  A plaintiff must also "allege facts showing that the work environment 'is both subjectively *and* objectively hostile or abusive.'"  *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 520 (10th Cir. 2017) (quoting *Lounds*, 812 F.3d at 1222). Courts therefore assess the alleged discriminatory conduct based on the totality of the circumstances, considering factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Lounds*, 812 F.3d at 1222 (quotation omitted).  "Common sense, and an appropriate sensitivity to social context" should be used to determine whether the alleged conduct is such that "a reasonable person in the plaintiff's position would find [the conduct] severely hostile or abusive."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998). But "whether the conduct was severe or pervasive is typically a question for the jury." *Throupe*, 988 F.3d at 1252.

DCS contends that the conduct alleged in Mr. Revan's complaint is "relatively tame in nature."  [Doc. 24 at 11].  In DCS's view, Ms. Carney's race- and sex-based comments "fall well short of even conduct described in prior cases that also did not measure up to a viable claim."  [*Id.*].  DCS does not identify those "prior cases" or compare Ms. Carney's conduct to the conduct at issue in those precedents.  Mr. Revan responds that Ms. Carney regularly made race- and sex-based comments to Mr. Revan, so the complained-of

comments were neither "isolated" nor "few in nature."  [Doc. 26 at 8].[6]

DCS's Motion does not appear to dispute whether the alleged harassment was based on a protected classification and subjectively offensive.[7]  Indeed, Ms. Carney's comments were explicitly based on Mr. Revan's race and sex.  And Mr. Revan perceived her comments as subjectively offensive—he alleges the comments made him so uncomfortable that he requested to "change shifts" to avoid her.  [Doc. 23 at ¶ 78].  As for whether the environment was objectively offensive, the Court agrees with DCS that the alleged conduct was not especially severe.  But discriminatory conduct must be "either severe *or* pervasive" to be actionable; "it does not have to be both."  *Morris*, 666 F.3d at 665 (quotation omitted).  In this context, the terms "severe" and "pervasive" "are, to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute."  *Brown*, 708 F. App'x at 521 (quotation omitted).

Mr. Revan's allegations of pervasive hostile conduct primarily focus on Ms. Carney's behavior toward him.  He alleges that during their frequent shifts together, Ms. Carney engaged in a campaign of unwanted romantic overtures despite Mr. Revan's

---

[6] Mr. Revan also claims in his Response that Ms. Carney made these comments to Mr. Revan "nearly every day" they worked together.  [Doc. 26 at 8].  This assertion is not supported by the factual allegations in the Amended Complaint, which only reflect that Mr. Revan and Ms. Carney worked together "frequently" and that Ms. Carney made these comments on a "weekly basis."  [Doc. 23 at ¶¶ 22–25].

[7] In its Reply, DCS argues that Mr. Revan "fails to allege that Carney's comments interfered with his work performance."  [Doc. 31 at 7].  Arguments raised for the first time in a reply brief are waived.  *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009).  And, regardless, "the law does not require a plaintiff to show that the discriminatorily abusive work environment seriously affected [his] psychological well-being or that it tangibly impaired [his] work performance."  *Morris*, 666 F.3d at 665 (quotation omitted).

repeated requests that she stop.  [Doc. 23 at ¶¶ 22, 25–26].  Ms. Carney made these comments on a "weekly basis" during at least four months of Mr. Revan's roughly nine-month tenure at DCS.[8]  *See* [*id.* at ¶¶ 24–25, 29].  When Mr. Revan would "frequently" ask her to "stop harassing him," Ms. Carney would respond, "[W]hat are you going to do about it?  I am one of the only females in the department, they'll never believe you over me."  [*Id.* at ¶ 26].  And when Mr. Revan finally did mention Ms. Carney's behavior to Sergeant Malott, Sergeant Malott's response confirmed Ms. Carney's taunts.  [*Id.* at ¶¶ 30–31].  Sergeant Malott expressly refused to investigate because Mr. Revan was male, Ms. Carney was younger and female, and Sergeant Malott believed his superiors would not believe Mr. Revan.  [*Id.* at ¶ 31].  Moreover, Ms. Carney combined her sex-based harassment of Mr. Revan with (admittedly mild) race-based comments—i.e., repeatedly calling him an "old white man" who would "never understand her"—and sex-neutral harassment, such as her baseless assertions that she was "above" Mr. Revan and he needed to "fall in line."  [*Id.* at ¶¶ 23, 28]; *see also Chavez v. New Mexico*, 397 F.3d 826, 833–35 (10th Cir. 2005) (crediting incidents of "hostile and physically threatening conduct not necessarily connected to gender" in hostile work environment analysis, including making a false complaint of misconduct to a plaintiff's employer).

These allegations are consistent with other cases that have found a viable hostile work environment claim based on repeated harassment.  For instance, the Tenth Circuit has held that "evidence of at least a dozen racially offensive comments and jokes" by a

---

[8] Mr. Revan alleges that Ms. Carney's comments began in July 2022, but it is unclear whether the comments stopped after she initiated an investigation against him in October 2022, or if the comments continued until Mr. Revan's termination in December 2022.  *See* [Doc. 23 at ¶¶ 22–29, 34, 40].

plaintiff's supervisors during a fourteen-month period was sufficient to establish a triable hostile work environment claim. *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 958 (10th Cir. 2012). Another decision affirmed a denial of judgment as a matter of law where the plaintiff presented evidence of approximately six "sexually disparaging remarks," some repeated frequently, over a twenty-three month period. *Nw. Fin. Acceptance*, 129 F.3d at 1415. And a court in this District has concluded that a plaintiff had presented sufficient evidence of "pervasive, if not severe, sexual harassment" to avoid summary judgment, based on seven incidents of sexually charged comments or conduct during an employee's five-month tenure with the defendant. *Clayton v. Dreamstyle Remodeling of Colo., LLC*, No. 20-cv-02096-KLM, 2022 WL 910957, at *11 (D. Colo. Mar. 28, 2022) (collecting cases involving viable hostile work environment claims based on repeated sex-based comments during relatively brief time periods).

Viewing the allegations as a whole and in the light most favorable to Mr. Revan, the Court concludes that Mr. Revan has plausibly alleged a hostile work environment based on pervasive discriminatory harassment. The Motion is respectfully **DENIED** as to Count III.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    Defendant's Partial Motion to Dismiss [Doc. 24] is **GRANTED in part** and **DENIED in part**;

(2)    Counts IV–VI are **DISMISSED without prejudice**;[9]

---

[9] "[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quotation omitted). DCS does not argue, nor

(3)     Count I is **DISMISSED without prejudice** insofar as it is predicated on

Captain Hasty's threats of termination or Mr. Revan's termination;

(4)     Count I **SURVIVES** insofar as it is predicated on Sergeant Malott's failure

to investigate Mr. Revan's complaint of harassment; and

(5)     The Motion is **DENIED** as to Count III.


DATED:  February 11, 2026                     BY THE COURT:

                                              Nina Y. Wang
                                              United States District Judge

---

does the Court find, that amendment would be futile in this case.  Accordingly, the Court
dismisses Counts IV–VI and the relevant portions of Count I without prejudice.